UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARK STEVEN BURROW,

                    Petitioner,

vs.                                    Case No.  2:11-cv-60-FtM-29UAM

SECRETARY, DEPARTMENT OF CORRECTION,

                    Respondent.

_____

**OPINION AND ORDER**

## I.  Status

Petitioner Mark Steven Burrow (hereinafter "Petitioner") initiated this action *pro se* by filing a Petition[1] for Writ of Habeas Corpus (Doc. #1) pursuant to 28 U.S.C. § 2254 challenging his judgment and conviction entered in the Twentieth Judicial Circuit Court, Collier County, Florida (case no. 01-2118CFA) on February 10, 2011.[2]  Petitioner was charged in an amended

---

[1]Petitioner attaches exhibits to his Petition including certain postconviction records and portions of the trial transcript.  These exhibits are unnecessarily duplicative of the Respondent's exhibits.  The Rules Governing Section 2254 Cases in the United States District Courts, directs that the Respondent is responsible for filing the relevant transcripts of the trial and postconviction proceedings.  See Rule 5.  Nevertheless, because the Petition does not set forth many facts in support of the eight grounds for relief and instead refers the Court to Petitioner's attached exhibits, the Court will reference Petitioner's attached exhibits when addressing his grounds for relief.  Petitioner's exhibits will be cited as "Pet. Exh.____."

[2]The Court applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing."  <u>Alexander v. Sec'y Dep't of Corr.</u>, 523 F.3d 1291, 1294
(continued...)

information with the following two counts: (1) lewd or lascivious exhibition in the presence of a child under sixteen; and, (2) lewd or lascivious molestation of a child under sixteen. Petition at 1; Response at 2. After holding a <u>Faretta</u>[3] hearing, the trial court allowed Petitioner to proceed without counsel, but assigned him "standby counsel." Response at 2. The jury found Petitioner guilty as charged. In accordance with the jury's verdict, the trial court sentenced Petitioner to concurrent sentences of 15 years on count one; and, 20 years followed by ten-years probation on count two. Petition at 1; Response at 2. Petitioner was also designated a sexual predator. <u>Id.</u>

Respondent filed a Response in opposition to the Petition (Doc. #20, Response) and attached supporting exhibits (Doc. #24, Exhs. 1-67), consisting of the postconviction pleadings and record on direct appeal. Petitioner filed a Reply (Doc. #21, Reply). This matter is ripe for review.

## II. Applicable § 2254 Law

### A. Deferential Review Required By AEDPA

Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). <u>Abdul-Kabir v.</u>

---

[2](...continued)
n.4 (11th Cir. 2008).

[3]<u>Faretta v. California</u>, 422 U.S. 806 (1975).

Quarterman, 550 U.S. 233, 246 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001). Consequently, post-AEDPA law governs this action. Abdul-Kabir v. Quarterman, 550 U.S. 233, 246 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007).

Under the deferential review standard, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011). "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt." Id. (internal quotations and citations omitted). See also Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770, 786 (2011) (pointing out that "if [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be.").

Both the Eleventh Circuit and the Supreme Court broadly interpret what is meant by an "adjudication on the merits." Childers v. Floyd, 642 F.3d 953, 967-68 (11th Cir. 2011). Thus, a state court's summary rejection of a claim, even without

explanation, qualifies as an adjudication on the merits that warrants deference by a federal court.  Id.; see also Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).  Indeed, "unless the state court clearly states that its decision was based solely on a state procedural rule [the Court] will presume that the state court has rendered an adjudication on the merits when the petitioner's claim 'is the same claim rejected' by the court." Childers v. Floyd, 642 F.3d at 969 (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court." Thaler v. Haynes, ___ U.S. ___, 130 S. Ct. 1171, 1173 (2010); see also Carey v. Musladin, 549 U.S. 70, 74 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000))(recognizing "[c]learly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision).  "A state court decision involves an unreasonable application of federal law when it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case, or when it unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Ponticelli v. Sec'y, Fla. Dep't of Corr., 690 F.3d 1271, 1291 (11th Cir. 2012)(internal quotations and citations omitted).  The

-4-

"unreasonable application" inquiry requires the Court to conduct the two-step analysis set forth in Harrington v. Richter, 131 S. Ct. 770. First, the Court determines what arguments or theories support the state court decision; and second, the Court must determine whether "fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior" Supreme Court decision. Id. (citations omitted). Whether a court errs in determining facts "is even more deferential than under a clearly erroneous standard of review." Stephens v. Hall, 407 F.3d 1195, 1201 (11th Cir. 2005). The Court presumes the findings of fact to be correct, and petitioner bears the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Supreme Court has held that review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S. Ct. at 1398. Thus, the Court is limited to reviewing only the record that was before the state court at the time it rendered its order. Id.

**B. Federal Claim Must Be Exhausted in State Court**

Ordinally, a state prisoner seeking federal habeas relief must first "'exhaus[t] the remedies available in the courts of the State,' 28 U.S.C. § 2254(b)(1)(A), thereby affording those courts 'the first opportunity to address the correct alleged violations of [the] prisoner's federal rights.'" Walker v. Martin, _____ U.S. _____, 131 S.Ct. 1120, 1127 (2011)(quoting Coleman v. Thompson, 501

U.S. 722, 731 (1991)).  This imposes a "total exhaustion" requirement in which all of the federal issues must have first been presented to the state courts.  Rhines v. Weber, 544 U.S. 269, 274 (2005).  "Exhaustion requires that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.  That is, to properly exhaust a claim, the petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review."  Mason v. Allen, 605 F.3d 1114, 1119 (11th Cir. 2010)(citing O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) and Castile v. Peoples, 489 U.S. 346, 351 (1989)).

To fairly present a claim, a petitioner must present the *same* federal claim to the state court that he urges the federal court to consider.  A mere citation to the federal constitution in a state court proceeding is insufficient for purposes of exhaustion. Anderson v. Harless, 459 U.S. 4, 7 (1983).  A state law claim that "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement."  Duncan v. Henry, 513 U.S. 364, 366 (1995)(per curiam).  "'[T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"  McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) (quoting Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317, 1343-44 (11th Cir. 2004)).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001), cert. denied, 534 U.S. 1136 (2002).   Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief . . . . ." Smith, 256 F.3d at 1138.   A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances.   First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error.   House v. Bell, 547 U.S. 518, 536-37 (2006); Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008). In Martinez v. Ryan, __ U.S. __, 132 S. Ct. 1309, 1318 (2012), the Supreme Court held that if "a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim ..." when (1) "the state courts did not appoint counsel in the initial-review collateral proceeding" or (2) "appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective" pursuant to Strickland.  Id.  In such instances, the prisoner "must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Id.

Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a showing of cause and prejudice, if such a review is necessary to correct a fundamental miscarriage of justice. House, 547 U.S. at 536; Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

### C.  Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d). Newland v. Hall, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case. Newland, 527 F.3d at 1184. In Strickland, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is

reliable." <u>Strickland</u>, 466 U.S. at 688; <u>see also</u> <u>Bobby Van Hook</u>, 558 U.S. 4, 8, 130 S. Ct. 13, 16 (2009); <u>Cullen v. Pinholster</u>, 131 S. Ct. at 1403 (2011).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." <u>Bobby Van Hook</u>, 130 S. Ct. at 17 (internal quotations and citations omitted).   It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000) (quoting <u>Strickland</u>, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny.   <u>Id.</u>   A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689.   An attorney is not ineffective for failing to raise or preserve a meritless issue.   <u>Ladd v. Jones</u>, 864 F.2d 108, 109-10 (11th Cir. 1989); <u>United States v. Winfield</u>, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different.   So, omissions are inevitable.   But, the issue is not

what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"  Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).

### III.  Findings of Fact and Conclusions of Law

This Court has carefully reviewed the record and, for the reasons set forth below,  concludes no evidentiary proceedings are required in this Court.  Schriro v. Landrigan, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007).  Petitioner does not proffer any evidence that would require an evidentiary hearing, Chandler v. McDonough, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court.  Schriro, 550 U.S. at 474; Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

In pertinent part, Petitioner's trial is summarized as follows:[4]

> The defendant elected to represent himself during trial.
> The trial court held a hearing on the matter and found
> that the defendant knowingly and intelligently waived his
> right to counsel, and appointed Greg Mangone, Esq., to
> act as standby counsel. . . . . The state presented its
> case-in-chief. [R.P.] testified to the following. [R.P.]
> is eight years old.  The defendant touched [R.P] on her
> "private", i.e. the place between a girl's legs.  The
> defendant touched [R.P.] on her "private" over her
> clothes.  On another occasion, [R.P.] saw the defendant

---

[4]To protect the identity of the victim and her family, the Court will use the individual's initials, rather than their full names.

touching his "private" with his hand.  "White stuff" came out of the defendant's "private" into a medicine cup. The defendant put the cup in the freezer.  On yet another occasion, the defendant asked [R.P.] to touch his "private" and she did so.

The state proffered the hearsay testimony of [S.P.], [L.P.], and Victoria Wodjak.  The trial court held a hearing on the admissibility of the hearsay testimony and concluded that it would permit the testimony.

[S.P.] testified to the following. [S.P.] is ten years old. [S.P.'s] sister, [R.P.], told him that there was "white stuff" in the freezer and that it came from the defendant's "private."

[L.P.] testified to the following. [L.P.] has two children, [R.P.] and [S.P.]. The defendant was [L.P.'s] boyfriend for about two years.  The defendant lived with [L.P.] and her two children. [L.P.] went to Publix after work on July 26, 2001. [L.P.] took [S.P.] with her.  The defendant and [R.P.] stayed in the apartment.  When [L.P.] returned home, the door to [R.P.]'s bedroom was shut and she was very quiet. [L.P.] asked [R.P.] what was wrong, but she did not respond. [L.P.] sensed that something was not right.

When [L.P.] began to testify that [R.P.] told her about "the last experience," the defendant's standby counsel moved for a mistrial on the grounds that the testimony implied multiple acts, i.e. more than two acts.  The trial court offered to give a cautionary instruction, but the defendant's standby counsel denied the offer.  The trial court denied the motion for a mistrial.

[L.P.] continued with her testimony.  [R.P.] told [L.P.] that the defendant touched [R.P.] on her "private," and also that "white stuff" came from the defendant and that he put it in a medicine cup and put it in the freezer.

Victoria Wodjak testified to the following.  Wodjak works for the Children Protection Team as a coordinator. [R.P.] told Wodjak that the defendant touched her "private" with his finger.  [R.P.] also told Wodjak that she saw the defendant touch his private with his hand and that "white stuff" came out of it. [R.P.] further told Wodjak that the defendant put the "white stuff" in a medicine cup and put it in the freezer.

-11-

Edward Burlingame testified to the following.  Burlingame works for the Marco Island Police Department as an officer.  Burlingame spoke with the defendant at the police station.  Burlingame read the defendant his Miranda rights and he waived them.  The defendant told Burlingame that while he was lying on his bed wearing boxer shorts, [R.P.] came into his bedroom and jumped on him.  The defendant thought that [R.P.] was going "ride the pony," but she laid forward on him and started humping him.  The defendant also told Burlingame that on another occasion, while he was coming in or going out of his bedroom wearing boxer shorts, [R.P.] grabbed him by the penis through the shorts.

The state rested its case.  The defendant's standby counsel moved for a judgment of acquittal on the ground that the state did not prove: (1) that the defendant committed te the offenses on or about July 26, 2011; (2) that the defendant intentionally masturbated in front of a child; and (3) that he intentionally touched a child in a lewd and lascivious manner.  The trial court denied the motion.

The defendant presented his case-in-chief.  Andrew Anzualda (ostensibly a police dispatcher) testified that she prepared an incident report on July 31, 2001 in response to a telephone call by the defendant that Potter had threatened him.

The defendant's standby counsel renewed the motion for judgment of acquittal.  The trial court denied the renewed motion.

Exh. 2 at 4-6.

**A.  Ground One**

Petitioner labels Ground One "prosecutorial misconduct." Petition at 5.  Petitioner contends that the prosecutor improperly amended the information to expand the time period during which the offenses were committed, without giving Petitioner sufficient notice.  Id.  Consequently, Petitioner submits that he did not have adequate time to prepare an *alibi* defense.  Id.

-12-

In Response, Respondent argues that to the extent Petitioner predicates his claim on Florida law, such a contention is not cognizable on federal habeas corpus review.   Response at 16. Further, Respondent submits that if the claim could be construed as raising a federal constitutional issue, the claim is procedurally barred because Petitioner did not preserve the ground and then raise the constitutional dimension of his ground on direct appeal. Id. at 17.   Specifically, Respondent notes that to the extent any error was raised concerning the amended information, appellate counsel did not alert the appellate court to any federal constitutional issues and did not brief a constitutional claim concerning either standby counsel's objection to the amended information, or the trial court's decision to overrule standby counsel's objection.   Id.

**1.   Exhaustion and Procedural Default**

It appears the initial information alleged that Petitioner committed the offenses on July 26, 2001. Pet. Exh. D at 76; Exh. 2 at 12.   The amended information changed the time period of the offense from May 1, 2011 to July 26, 2001.   Id.   The record confirms that appellate counsel made a passing reference to the claim arising from the extended date range in the amended information in the Ander's[5] brief, but did not alert the appellate court to any federal constitutional issue arising therefrom.   See Exh. 2 at 12 (noting the trial court's denial of defendant's

---

[5]Anders v. California, 386 U.S. 738 (1967).

standby counsel's objection to the state's motion to orally amend the information to enlarge the time frame concerning the allegation of the commission of the offense to between May 1 and July 26, 2001 as to count one (T 147-150)).  Accompanying the <u>Ander's</u> brief was the "certificate of compliance with <u>Anders v. California</u>, 386 U.S. 738 (1967)" which was provided to Petitioner, and notified him that he "has an opportunity to raise any points that the [petitioner] believes meritorious and which were not raised by the undersigned attorney." Exh. 2 at 2.  The appellate court then issued an order notifying Petitioner that appellate counsel filed an <u>Anders</u> brief and provided him thirty days to file "an additional brief calling the court's attention to any matters he feels should be considered in connection with this appeal." Exh. 3.  Petitioner did not file an additional brief in response.  The appellate court *per curiam* affirmed Petitioner's conviction and judgment.  Exh. 9.

Petitioner vaguely and generally referenced this claim concerning the trial judge's decision to deny standby counsel's objection to the amended information, which extended the date range for the offense, as a ground for relief in his initial motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850 ("Rule 3.850 motion") and in his amended Rule 3.850 motion.[6]  <u>See</u> Exh. 40 at 6; Exh. 42 at 2.  In addressing this claim

---

[6]In ground 2(e) of the initial Rule 3.850 motion, Petitioner argued:

  [t]he trial judge showed a great deal of
                                                        (continued...)

in the amended Rule 3.850 motion, which was raised as a trial court error claim, the postconviction court noted that the claim was not cognizable in a rule 3.850 proceeding.  <u>See</u> Exh. 46 at 4.  Further, the postconviction court noted that Petitioner did not raise the claim on direct appeal and never moved to recuse the judge.  <u>Id.</u> The appellate court affirmed the decision.  Exh.  50.

Initially, the Court notes that Petitioner does not raise a federal constitutional issue in Ground One.  Petitioner does not explain how the prosecutor's amendment of the information to edit the date range that the offense occurred resulted in a denial of his federal constitutional rights.  The amended information still charged Petitioner with violating the same Florida Statutes, but enlarged the time period during which the incidents occurred.  Even if the Court could construe the claim as raising a Fourteenth Amendment Due Process claim, the Court finds Ground One is unexhausted and procedurally defaulted.

A federal claim arising  stemming from "prosecutorial misconduct" for amending the information was not raised on direct appeal.  Appellate counsel filed an <u>Anders</u> brief and Petitioner never filed a supplemental brief despite receiving notice from both

---

[6](...continued)
        prejudice in denying 19 different motions
        before and during trial (see attached exhibits
        C-1-2-3).  These motions, had they been
        granted, would have changed the verdict to
        "not guilty."

Exh. 40 at 8; <u>see</u> <u>also</u> Exh. 42 at 4 (ground 3(d)).

appellate counsel and the appellate court.  In Florida, claims of prosecutorial misconduct must be raised on direct appeal and the failure to do so results in a procedural default.  <u>See</u> Exh. 46 at 4 (addressing other prosecutorial misconduct claims and finding them improperly raised in the 3.850 proceeding); <u>see</u> <u>also</u> <u>Spencer v. State</u>, 842 So. 2d 52, 60 (Fla. 2003) (finding claims that should have been raised on direct appeal, but were not, were procedurally barred).  The claim Petitioner raised in his amended Rule 3.850 motion did not involve prosecutorial misconduct, but rather involved an alleged claim of trial court error.  Consequently, the Court finds Ground One is unexhausted and procedurally barred.

While Petitioner does not expressly attempt to allege cause, prejudice, or a fundamental miscarriage of justice to overcome the procedural default of Ground One, liberally construed the Petition does raise a claim that appellate counsel rendered ineffective assistance for failing to raise several claims on direct appeal. <u>See</u> Petition at 18 (entitled "ineffective assistance of appellate counsel" and stating "Grounds 2, 3, 4, 5, and 6 (were said by the State) could have and should have been raised on direct appeal, then why were they not?)  An ineffective assistance of counsel claim can constitute cause if that claim is not itself procedurally defaulted. <u>Edwards v. Carpenter</u>, 529 U.S. at 451-52.  A petitioner asserting "prejudice" must demonstrate that there is "at least a reasonable probability that the result of the proceeding would have been different." <u>Henderson</u>, 353 F.3d at 892.

Here, Petitioner filed a state habeas corpus petition alleging ineffective assistance of appellate counsel. Exh. 15. Petitioner did not, however, raise any specific claim that appellate counsel rendered ineffective assistance for failing to raise a prosecutorial misconduct claim stemming from the prosecutor's amendment of the information to the enlarged time period. Id. Thus, this claim is also procedurally defaulted and insufficient to overcome the procedural default of his prosecutorial misconduct claim. Thus, Ground One is dismissed as procedurally defaulted.

**B.  Ground Two**

Petitioner argues that the trial court committed an error by overruling an objection to a state witness' testimony. Petition at 8. Specifically, Petitioner contends that Victoria Wodjak improperly vouched for the credibility of the child victim during the prosecutor's direct examination. Id. (citing Pet. Exh. E at 89). The exhibit Petitioner cites to in the Petition is one-page copy of the trial transcript containing a portion of a witness' testimony concerning the statement the child victim made to the witness, presumably the witness is Victoria Wodjak.[7] The Petition

---

[7]The portion of the trial transcript that Petitioner references and numbers as page 89 of his exhibits contains the following testimony:

A.  She was very age-appropriate
Q.  What about intelligence?
A.  She's average intelligence to above-average.
Q.  All right.  Now when you interviewed her, did she make any disclosures in terms of something happening inappropriate with the Defendant, Mark Burrow?

(continued...)

-17-

does not specify which federal constitutional right was violated by the witness' alleged "improper vouching." Id.

In Response, Respondent clarifies that Ms. Wodjak was the "Child Protection Team Coordinator." Response at 25. Respondent argues that to the extent Petitioner's claim is based on an evidentiary ruling under Florida law, this Court does not have jurisdiction to address the claim. Id. Respondent maintains that determinations about whether testimony is admissible under Florida law are solely within the province of the Florida courts. Id. (citing Fernandez v. State, 730 S.2d 277 (Fla. 1999) (determination of whether certain evidence is admissible is made in the context of the relevancy test and trial judge must balance the import of the evidence with respect to case of party offering it against danger of unfair prejudice); Estelle v. McGuire, 502 U.S. 62, 72 (1991) ("Nor do our habeas powers allow us to reverse [a petitioner's] conviction based on a belief that the trial judge incorrectly

---

[7](...continued)

      Counsel: Objection for the record, Your Honor.
      The Court: Yes. Overruled.   You can answer the question.
A.  Yes, she did.
Q.  Did she tell you where she was touched?
A.  Yes, she did.
Q.  What did she say about that?
A.  There was- I had to question her and had her answer the questions, it was easier for her to provide answers to questions then provide a full narrative, but she did state that the Defendant touched her private.
Q.  Okay.  Did she say what had he touched her private with?

interpreted the California Evidence Code in ruling that the prior injury evidence was admissible as bad acts evidence in this case.")).   Respondent further argues that Ground Two, similar to Ground One, is not properly exhausted and therefore procedurally barred because Petitioner did not preserve the federal constitutional dimension of the claim and then raise the constitutional dimension of the claim on direct appeal.   Id. at 26.

### 1.   Exhaustion and Procedural Default

The record confirms that no claim concerning "improper vouching" by the victim protection team member was raised on direct appeal.   See Exh. 2.   Appellate counsel made a passing reference to the fact that the trial court denied standby counsel's objection to the hearsay testimony from the child protection team member in the Ander's[8] brief, but did not raise any issue concerning improper vouching, and did not alert the appellate court to any federal constitutional issues arising therefrom.   See Exh. 2 at 14 (noting "[t]he defendant's standby counsel objected to the proposed hearsay testimony by the child protection team worker, Vicki Wodjak, concerning the child victim's statements to the worker (T 142). The trial court held a hearing on the matter and concluded that it would be inclined to permit the testimony.").   Id.   Petitioner did not file a supplemental brief raising any claims upon notice of the filing of the Anders brief.

---

[8]Anders v. California, 386 U.S. 738 (1967).

Petitioner's amended Rule 3.850 motion raised a claim that the trial judge was "prejudiced" against him and referenced that the "trial judge overruled objection to State witness Victoria Wodjak, vouching credibility for the child during direct examination by the prosecutor with the jury present.  See Paul v. State, 790 So. 2d 508 (Fla. 5th DCA 2001); Tingle v. State, 536 So. 2d 202 (Fla. 1988); Quintero v. State, 30 Fla. L. Weekly D131 (Fla. 1st DCA 2004); and U.S. v. Azure, 801 F.2d 336 (8th Cir. 1986) holding reversal 18 U.S.C.A. §§ 4, 1151, 1153, 2032; Fed. R. Evid. Rule 608(a), (a)(1), 28 U.S.C.A.)."  Exh. 42 at 3-4 (Ground Three c)(errors in original).  The postconviction court denied Petitioner relief finding that the claim was not cognizable in a 3.850 proceeding.  Exh. 46 at 4.  The appellate court affirmed the postconviction court's decision.  Exh. 50.

At no point during Petitioner's direct appeal or in his 3.850 proceedings did Petitioner argue that Ms. Wodjak improperly vouched for the credibility of the victim.  To the extent the Court could construe the instant claim as really a claim concerning the trial court's failure to sustain the objection of his standby counsel to the witness' testimony based on hearsay, the ground never alerted the State courts to a federal constitutional issue.  The failure raise the claim in terms of a federal constitutional violation in the State courts has resulted in a procedural bar.  Thus, the Court must determine whether Petitioner establishes cause, prejudice, or

a fundamental miscarriage of justice to overcome the procedural bar of Ground Two.

Petitioner alleges that appellate counsel rendered ineffective assistance for failing to raise this claim on direct appeal.[9] <u>See</u> <u>supra</u> at 16; <u>see also</u> Petition at 18.  An ineffective assistance of counsel claim can constitute cause if that claim is not itself procedurally defaulted.  <u>Edwards</u>, 529 U.S. at 451-52.  A petitioner asserting "prejudice" must demonstrate that there is "at least a reasonable probability that the result of the proceeding would have been different."  <u>Henderson</u>, 353 F.3d at 892.  Petitioner raised his ineffective assistance of appellate counsel claim in a petition for writ of habeas corpus filed before the State court.  Exh. 15 at 4.  The appellate court denied the petition without a written opinion.  Exh. 16.  Thus, it appears Petitioner exhausted his claim.

Nevertheless, the Court finds Petitioner's ineffective assistance of appellate counsel claim has not established cause to overcome the procedural default.  To succeed on his claim that appellate counsel rendered ineffective assistance, Petitioner must show that his attorney's performance was deficient and that the deficiency was prejudicial.  <u>Strickland</u>, 466 U.S. at 687.

---

[9]In Ground Eight of the instant Petition, Petitioner raises a claim of ineffective assistance of appellate counsel.  Because the Court addresses the claim under each ground of the instant Petition that appears procedurally defaulted stemming from the failure to raise the ground on direct appeal, the Court does not include separate section to specifically address Ground Eight.

Appellate counsel cannot be deemed ineffective for raising this claim because it is meritless.  As evidenced by the excerpt Petitioner refers to in support of his claim that the witness vouched for the victim's credibility, supra footnote 5, the record reveals no improper vouching for the victim's credibility.  Thus, Petitioner has not shown cause, prejudice, or a fundamental miscarriage of justice to overcome the procedural bar of Ground Two.  Consequently, Ground Two is dismissed as procedurally barred.

**C. Ground Three**

Petitioner argues that the prosecutor failed to disclose evidence that the trial court permitted him to have in 2002. Petition at 9.  Petitioner does not specifically describe what evidence the prosecutor failed to disclose to Petitioner, but references exhibit D attached to the Petition.  Id. (citing Pet. Exh. D at 59-75).  Petitioner's Exhibit D contains copies of property receipts inventoried by the Marco Island Police Department and portions of trial transcripts in which certain evidence is discussed, including video and/or audiotapes of the CPT interviews with the victim and her brother.

In Response, Respondent notes that Petitioner points to a stipulation regarding the Child Protection Team materials, but fails to specify which materials the prosecutor did not disclose, and consequentially argues that the Court can dismiss Ground Three as vague and conclusory.  Response at 28.  Respondent further argues that the claim is not cognizable for federal review to the

extent it only raises issues involving Florida law.  <u>Id.</u> at 29. Respondent then argues that Ground Three is not exhausted and is procedurally barred because it was not raised on direct appeal. And, to the extent Petitioner tried to raise a claim in his rule 3.850 motion, the postconviction court applied Florida's procedural default rule.  <u>Id.</u>  Finally, Respondent argues that even if the Court reaches the merits of the <u>Brady</u>[10] claim, Petitioner has not satisfied any of the elements: (1) the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material.  <u>Id.</u> at 28 (citing 373 U.S. at 87-88).  In his Reply, Petitioner does not clarify what evidence he believes he did not receive from the prosecutor.  <u>See</u> Reply.

### 1. Exhaustion and Procedural Default

The record confirms that no claim concerning the alleged failure of the prosecutor to provide evidence to Petitioner was raised on direct appeal.  <u>See</u> Exh. 2.  The <u>Anders</u> brief mentioned that the court approved the parties' stipulations with respect to disclosure of the child protection team records, reports, and videotapes.  <u>Id.</u> at 1-2.  The <u>Anders</u> brief did not contain a claim that the prosecutor withheld evidence from Petitioner and Petitioner did not file a supplemental brief raising such a claim. Under Florida law, a <u>Brady</u> claim had to be raised on direct appeal. <u>Smith v. Sec'y, Dep't of Corr.</u>, 572 F.3d 1327 (11th Cir. 2009) (recognizing procedural bar to <u>Brady</u> claims not raised on direct

---

[10]<u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

appeal in Florida); see also Rose v. State, 675 So.2d 567, n. 1 (Fla. 1996) (movant's claims including a Brady claim were procedurally barred because it was not raised on direct appeal); Spencer v. State, 842 So.2d at 60 (substantive prosecutorial misconduct claim raised in a rule 3.850 motion were procedurally barred because they were not raised on direct appeal).

In Petitioner's amended rule 3.850 motion, he argued that the prosecutor withheld videotape evidence, audiotapes, and "key witnesses" identified as Courtney Williams and Dale Stephan. Exh. 42 at 4 (ground five). The postconviction court denied Petitioner relief on his fifth ground finding as follows:

> the Defendant argues that the prosecution failed to disclose evidence. Once more, this claim is not cognizable in a rule 3.850 motion and is procedurally barred because it should have been raised on direct appeal. . . . .

Exh. 46 at 4. The appellate court per curiam affirmed. Exh. 50. Consequently, the Court dismisses ground three as procedurally defaulted. Harris v. Reed, 489 U.S. 255, 262 (1989); Alderman v. Zant, 22 F.3d 1541, 1550 (11th Cir. 1994).

In attempt to overcome the procedural default, Petitioner alleges that appellate counsel rendered ineffective assistance for failing to raise this claim on direct appeal. See supra 16; see also Petition at 18. An ineffective assistance of counsel claim can constitute cause if that claim is not itself procedurally defaulted. Edwards, 529 U.S. at 451-52. A petitioner asserting "prejudice" must demonstrate that there is "at least a reasonable

-24-

probability that the result of the proceeding would have been different." Henderson, 353 F.3d at 892.

Petitioner raised his ineffective assistance of appellate counsel claim in a petition for writ of habeas corpus filed before the State court. Exh. 15 at 3 (alleging Brady violation). The appellate court denied the petition without a written opinion. Exh. 16. Thus, it appears Petitioner exhausted his ineffective assistance of appellate counsel claim. Nevertheless, Petitioner fails to demonstrate cause, prejudice, or a fundamental miscarriage of justice to excuse his default. To succeed on this claim, Petitioner must show that his attorney's performance was deficient and that the deficiency was prejudicial. Strickland, 466 U.S. at 687. Appellate counsel did not render deficient performance by failing to raise a Brady claim when Petitioner fails to specify which evidence he did not review and no Brady claim is otherwise apparent from the record. The incomplete attachments Petitioner references in his Petition show that defense counsel did receive and review transcripts of the witnesses' interviews and a videotape. Pet. Exh. D at 69-70 (recognizing defense counsel saw the only video in the prosecutor's possession). Thus, the Court dismisses Ground Three as procedurally defaulted.

## C. Ground Four

Petitioner asserts that the jury did not follow the jury instructions regarding reasonable doubt. Petition at 11.

Petitioner explains that the jury wrote a letter to the judge asking for "more evidence." Id. (citing Pet. Exh. E at 90). The exhibit Petitioner references is a letter written to the judge by the jury foreperson asking for a copy of the Marco Island Police Report dated August 3, 2011, that included Petitioner's statement after he was read his Miranda rights. Pet. Exh. E at 90; see also supra at 12. In the alternative, the jury asked for clarification of the police officer's testimony that Petitioner told the officer that the victim charged into Petitioner's room. Pet. Exh. E at 90.

In Response, Respondent asserts that this ground is unexhausted and procedurally barred because Petitioner did not preserve his ground as a constitutional claim and then brief such on direct appeal. Response at 30. Respondent further argues that when Petitioner did raise this claim in his amended Rule 3.850 motion, the postconviction court found the claim procedurally barred. Id.

### 1. Exhaustion and Procedural Default

The record confirms that no claim concerning the jury's alleged failure to follow the jury instructions was raised on direct appeal. See Exh. 2. The Ander's brief did not make a remote reference to any claim concerning the jury not following its instructions. Id. Despite being advised by appellate counsel and

the appellate court, Petitioner did not file a supplemental brief to alert the appellate court about this claim.

Petitioner raised this claim in his amended rule 3.850 motion, arguing that the jury did not follow the instruction on reasonable doubt as evidenced by the letter the foreperson wrote to the judge asking for a copy of Petitioner's statement to an officer from the Marco Island Police Department.  Exh. 42 at 5 (ground six).  The postconviction court denied Petitioner relief on this claim finding it procedurally defaulted because it should have been raised on direct appeal.  Exh. 46 at 4-5.  The appellate court affirmed. Exh. 50.  Because the last state court rendering judgment found the claim to be procedurally defaulted, the Court finds this claim procedurally defaulted unless Petitioner can show cause, prejudice, or a fundamental miscarriage of justice to overcome the procedural bar.  Harris, 489 U.S. at 262.

Petitioner claims appellate counsel rendered ineffective assistance for failing to raise this claim on direct appeal.  Exh. 15 at 13 (raising jury error).  The appellate court denied Petitioner relief without a written opinion.  Exh. 16.  Thus, it appears Petitioner has exhausted his claim.  To succeed on this claim, Petitioner must show that his attorney's performance was deficient and that the deficiency was prejudicial.  Strickland, 466 U.S. at 687.  The Court finds appellate counsel did not render deficient performance by failing to raise Petitioner's alleged jury

error claim.  The jury simply asked the trial judge if they could re-review Petitioner's statement to the officer at the Marco Island Police Department.  As set forth _supra_, Petitioner waived his _Miranda_ rights and told the police officer in pertinent part that:

> while he was lying on his bed wearing boxer shorts, [R.P.] came into his bedroom and jumped on him.  The defendant thought that [R.P.] was going "ride the pony," but she laid forward on him and started humping him.  The defendant also told Burlingame that on another occasion, while he was coming in or going out of his bedroom wearing boxer shorts, [R.P.] grabbed him by the penis through the shorts.

Exh. 2 at 4-6; _supra_ at 12.  The jury's request to review Petitioner's statement does not show that the jury did not follow the instruction regarding reasonable doubt.  Instead, it appears the jury did not find Petitioner's statement to the police trustworthy and gave greater weight to the testimony of the victim, her brother, her mother, and the Child Protection Team member. Consequently, the Court finds Petitioner has not demonstrated cause, prejudice, or a fundamental miscarriage of justice to excuse the procedural bar and Ground Four is dismissed as procedurally defaulted.

### D.  Ground Five

Petitioner argues that "standby counsel" rendered ineffective assistance.  Petition at 12.  Petitioner explains that the trial judge told standby counsel to help Petitioner take care of "a number of tasks," and he failed to do so.  _Id._ (citing Pet. Exh. D at 59-75, Exh. E 92-97, 106-107).  In the exhibits Petitioner

-28-

references the stipulation for disclosure of child protection team records, reports, and videotapes; the order adopting the stipulation; a copy of the docket history; the City of Marco Island property receipt; and, various portions of the trial transcript that are not complete.  See generally id.

In Response, Respondent argues that the ground is waived and foreclosed by Petitioner's knowing and voluntary election to waive his right to counsel and proceed pro se under Faretta.  Response at 31 (citing Lofton v. California, 2011 WL 1260042, *3 (C.D. Cal. 2011)(unpublished)("Petitioners cannot both have their Faretta cake and eat it by choosing pro se status over appointed to retained counsel and thereafter, blaming standby counsel for supposed missteps and omissions) (citing Wilson v. Parker, 515 F.3d 682, 697 (6th Cir. 2008) (to the extent standby counsel failed to act during the trial, Petitioner "merely suffered the consequences of his decision to proceed pro se.")).  Respondent further argues that Petitioner has not established that the State court's decision is contrary to or resulted in an unreasonable application of clearly established Supreme Court precedent.  Id. at 32.  There is no constitutional right to standby counsel.  Id. (citing Porter v. United States, 2011 WL 1832716, *4 (M.D. Fla. 2011)(unpublished)(citing Simpson v. Battaglia, 458 F.3d 585, 597 (7th Cir. 2006); McKaskle v. Wiggins, 465 U.S. 168 (1984)(recognizing that the primary concern in McKaskle is that

appointed standby counsel does too much, so as to abrogate the
<u>Faretta</u> right to self-representation, not that counsel does too
little)).

### 1. Exhaustion and Procedural Default

Petitioner raised this claim in his amended Rule 3.850 motion.
Exh. 40 at 14 (arguing in ground seven that standby counsel
rendered ineffective assistance due to "a conflict of interest,"
*inter alia*).  The postconviction court denied Petitioner relief on
this claim finding as follows:

> the Defendant argues his legal advisor was ineffective
> and unhelpful during trial.  The record conclusively
> refutes the Defendant's claim.  The record clearly
> indicates that the Defendant knowingly, intelligently and
> freely waived his right to counsel and decided to proceed
> to trial while representing himself.  Attorney Mangone
> served as the Defendant's legal advisor, advising the
> Defendant and making a host of legal motions throughout
> the trial on the Defendant'[s] behalf, such as objection
> to child hearsay (State's Exhibit 4, pg. 142); argued to
> exclude all child hearsay testimony from two different
> State witnesses (State's Exhibit 4, pg. 195-197); motion
> for a mistrial (State's Exhibit 4, pg. 222); motion for
> Judgment of Acquittal (State's Exhibit 4, pg. 281-283);
> argued jury instruction (State's Exhibit 4, pg. 283-305);
> and argued a second motion for mistrial (State's Exhibit
> 4, pg. 322).  The record conclusively shows that the
> Defendant's legal advisor consistently argued legal
> issues before the Court on the Defendant's behalf.  Even
> with the presumption that a "legal advisor" is held to
> the same standards as an attorney, the Defendant has
> failed to demonstrate either prong of the <u>Strickland</u>
> test.  The Defendant has failed to demonstrate an
> entitlement to relief and accordingly, Ground 7 is
> denied.

Exh. 46 at 5.   The appellate court affirmed the postconviction court's decision. Exh. 50. Thus, the ground appears exhausted and the Court will turn to address the merits.

### 2. Merits

The Court finds Petitioner has neither shown deficient performance or prejudice arising from standby counsel's representation.   Indeed, after a defendant enforces his or her constitutional right to proceed pro se under Faretta, there is no constitutional right to "standby counsel."   See McKaskle v. Wiggins, 465 U.S. 168, 183 (noting in dicta that "Faretta does not require a trial judge to permit 'hybrid' representation."); United States v. Webster, 84 F.2d 1056, 1063(8th Cir. 1996)(same); Simpson v. Battaglia, 458 F.3d 585, 597 (7th Cir. 2006)(same); United States v. Singleton, 107 F.3d 1091, 1100-03 (4th Cir. 1997)(same); Clark v. Perez, 510 F.3d 382, 395 (2d Cir. 2008)(same).   In this case, Petitioner knowingly and voluntarily requested to proceed pro se with the assistance of standby counsel.   Exh. 44 at 15.   A defendant who chooses to represent himself cannot then complain that the quality of his own defense amounted to a denial of the right to effective assistance of counsel.   Faretta, 422 U.S. at 834, n.2. Accordingly, Petitioner is denied relief on Ground Five.

### E. Grounds Six and Seven

In Grounds Six and Seven, Petitioner takes issue with the sentencing scoresheet.   In Ground Six, Petitioner specifically

argues that there is no "prior Tennessee offense" and he was improperly scored "a level 8." Petition at 14 (citing Exh. E at 100-102, which appears to be the State court's sentencing scoresheet). Petitioner makes reference to this argument in Ground Seven, but also argues that he was improperly scored "2 points" for victim injury because there was no physical injury. Id. at 15. Petitioner also submits that he should have been scored a level 9 "pbl offense," but does not explain why. Id. And, Petitioner argues that there "is an unlisted felony offense and should have been scored at a level 4." Id.

In Response, Respondent notes that to the extent Petitioner takes issue with a prior Tennessee conviction, he raised the claim as a matter of State law in his motion to correct sentencing error pursuant to Florida Rule of Criminal Procedure 3.800(a). Response at 33. The postconviction court denied relief on the basis that the claim was not properly raised in a Rule 3.800 motion, and the appellate court per curiam affirmed. When Petitioner raised the ground in his amended Rule 3.850 motion, the postconviction court denied Petitioner relief noting that Petitioner did not allege that he did not commit the offense, only alleged that the prior offense was not contained in the record. Id. Respondent argues that although Petitioner raised this claim before the State court, he never raised the claim in terms of a federal constitutional violation. Id. at 34-35. Consequently, Respondent argues Ground

Six is procedurally barred.  Additionally, Respondent argues that this Court may not review a State court's alleged failure to adhere to its own sentencing procedures.  Id. at 33-34 (citing Whitehead v. Sec'y, Dep't of Corr., 2008 WL 423507 (M.D. Fla. 2008)(unpublished)).

In response to Ground Seven, Respondent notes that Petitioner raised this claim in a Rule 3.800 motion as a matter of state law and did not raise any federal constitutional issues.  Response at 35.  Consequently, Respondent argues that Ground Seven is procedurally barred.  Id.  Respondent further argues that Petitioner raises a State law sentencing issue for which federal habeas corpus relief does not lie.  Id. at 36.

1.  **Exhaustion and Procedural Default**

Initially, the Court notes that Petitioner does not specify which rights under the United States Constitution were violated by the alleged scoresheet error.  See Petition.  A review of the record reveals that Petitioner raised the prior conviction issue and the sentencing calculation issue on his scoresheet in his Rule 3.800 motion.  Exh. 25.  The postconviction court denied Petitioner's motion finding in pertinent part as follows:

> Defendant raises two claims relating to his scoresheet, one asserting an error concerning the level of the additional offense, lewd and lascivious exhibition; the other arguing that the inclusion of a prior related offense from Tennessee is illegal.
>
> As to his first claim, Defendant alleges that the additional offense listed on his scoresheet was

improperly scored as a level 5 offense, when it should be a level 4. Defendant cites Fla. Stat. §§ 921.0013 and 921.0014 as the appropriate authority. Defendant is mistaken in his reliance on sections 921.0013 and 921.0014, as they only relate to criminal offenses committed before October 1, 1998. For crimes committed on or after October 1, 1998, sections 921.0022 and 92.0023 apply. Defendant's crimes occurred in July of 2001. Attached hereto is a copy of Defendant's Information.

Fla. Stat. § 921.0011 is the offense severity-ranking chart of the Criminal Punishment Code. Fla. Stat. § 921.0023 ranks those felonies not listed in § 921.0022.

The information charging Defendant with the exhibition offense lists Fla. Stat. § 800.04(7)(b) as the governing statute for the charge. Defendant's judgment and sentence and scoresheet likewise list the offense as falling under § 800.04(7)(b).

The State failed to adequately address the appropriate score level in either its original Response, or its Supplemental Response. Instead, the State simply stated that Defendant's "offense of Lewd and Lascivious Exhibition was properly scored as a level 5 offense," without citing any supporting authority.

After careful perusal of § 921.0022, the Court notes that Defendant is correct to the extent that subsection (b) of § 800.04(7) is not listed. However, the statutory sections providing penalties for lewd and lascivious exhibition are actually §§ 800.04(7)(c) and (d). It is important to note that in 2000, the legislature amended § 800.04(7). Prior to the amendment, subsection (b) related to offenders 18 years or older, while subsection (c) related to offenders less than 18. After the amendment, the subsections shifted, so that now, section 800.04(7)(b) merely defines the crime, without providing any penalties, while subsections (c) and (d) provide for the penalties. Subsection (c) applies to offenders 18 years old or older, and subsection (d) applies to offenders under 18. Both the information, jury verdict and scoresheet clearly list Defendant as being over 18 at the time of the crime. Therefore, since § 800.04(7)(c) applies to offenders 18 or older, it is apparent, from the face of the record, that defendant's offense under §

800.04(7)(b) instead of § 800.04(7)(c) is simply a scrivener's error and harmless.

In any event, the Court notes that the difference between a level four additional offense score and a level five offense score is only 1.8 points. Defendant's scoresheet was calculated using the points assigned to a level 5 offense, resulting in the lowest permissible prison sentence of 99.9 months. A scoresheet based on a level 4 offense would have resulted in the lowest permissible sentence of 98.5 months. Defendant's sentencing range was from the lowest permissible score to 45 years. Defendant was not sentenced to the bottom of his range. Instead, Defendant was sentenced to a specific term: 140 months (20 years) in prison, followed by 120 months (10) years of probation. In light of the fixed sentence he received, and in light of the fact that any potential discrepancy would result in a minor 1.4 month difference, the Court finds no reasonable likelihood that the sentence would have been any different.


As to the second claim, Defendant alleges in his motion that a prior, out-of-state conviction was used in his scoresheet, without evidence having been offered to the court to prove that the elements of the prior crime were compatible with those of the relevant Florida statutes. As no additional information about this prior conviction was entered in the record, the error does not appear on the face of the record. Scoresheet errors based on the calculation of Defendant's prior record are not properly raised on a motion to correct an illegal sentence pursuant to Rule 3.800(a). In short, Defendant's scoresheet is not, on its face, readily discernable as incorrect. See Prieto v. State, 627 S.2d 20 (Fla. 2d DCA 1993); Huffman v. State, 611 So. 2d 2 (Fla. 2d DCA 1992). Therefore, Defendant has failed to demonstrate an entitlement to relief on this issue.

Exh. 34. The appellate court *per curiam* affirmed. Exh. 37.

In Petitioner's amended rule 3.850 motion (in ground nine), Petitioner argued that "count 2 is an illegal sentence." Exh. 42 at 7. Petitioner argued that count two should have been scored a

level 7 and was instead erroneously scored a level 9.  <u>Id.</u>  The
postconviction court denied Petitioner relief on the clam, finding
it successive due to Petitioner's Rule 3.800 motion.  Exh. 46 at 6.
On appeal, the Second District Court of Appeal affirmed in part,
but remanded with respect to Petitioner's scoresheet error claim
noting that the claim Petitioner raised in his Rule 3.850 motion
was different from the claim he raised in his Rule 3.800 motion.
Exh. 50.  On remand, the postconviction court found in relevant
part as follows:

> In Ground 9 of the Defendant's motion, it appears the
> Defendant is alleging that he was actually convicted of
> second degree felony rather than a first degree felony
> for Count 2.  The Defendant claims that he was convicted
> of Fla. Stat. § 800.04(5)(c)2, a level 7 offense.
> After a careful and extensive review of the record, the
> Defendant is mistaken.  The information, verdict form,
> scoresheet, and transcript of the trial proceedings all
> refute any conclusion other than the Defendant was
> convicted of a violation of Fla. Stat. § 800.04(5)(b), a
> first degree felony.  The trial transcript reflects that
> the Court orally pronounced the Defendant guilty of the
> offense charged in the amended information on Count 2.
> However, it appears that the Defendant's written judgment
> and sentence contains a scrivener's error on page 2,
> which reflects that the Defendant was convicted of a
> violation of Fla. Stat. § 800.04(5)(c)(2), a first degree
> felony.  "Where there is a discrepancy between the written
> sentence and the oral pronouncement of sentence, the
> latter prevails."  <u>Williams v. State</u>, 744 So. 2d 1156
> (Fla. 2d DCA 1999)(citing <u>Brammer v. State</u>, 554 So. 2d
> 671 (Fla. 2d DCA 1990).

Exh. 59 at 1-2.  The appellate court *per curiam* affirmed.  Exh. 63.

Although Grounds Six and Seven were raised before the State
courts, Petitioner never alerted the State courts to any federal
constitutional issue.  Thus, Grounds Six and Seven are not properly

exhausted.  Duncan v. Henry, 513 U.S. 364 (1995)(quoting Picard v. Conner, 404 U.S. 270, 275 (1971) (noting exhaustion of state remedies requires that petitioners fairly present federal claims to the state courts in order to allow state courts an opportunity to pass upon and correct alleged violations of a prisoners' federal rights); Rose v. Lundy, 455 U.S. 509, 518-19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts thus giving those courts the first opportunity to review claims of constitutional error.").  Thus, Grounds Six and Seven are procedurally barred because Petitioner would now be precluded from filing any claim arising under the United States Constitution concerning the sentencing scoresheets in the Florida courts.  Whiddon v. Dugger, 894 F.2d 1266 (11th Cir. 1990) (recognizing and applying the two-year bar of rule 3.850); Foster v. State, 614 So. 2d 455, 458 (Fla. 1992) (recognizing State's successive petition doctrine).

## 2.  Merits

Even if the Court did reach the merits of Grounds Six and Seven, these claims are not cognizable in this federal habeas corpus proceeding because it concerns matters of state law only. Federal habeas relief is available to correct only those injuries resulting from a violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  It is well-settled law in this circuit that federal courts cannot review a state's alleged

failure to adhere to its own sentencing procedures.  Brannan v. Booth, 861 F.2d 1507 (11th Cir. 1988); Carrizales v. Wainwright, 699 F.2d 1053 (11th Cir. 1983).  Thus, Petitioner has no recourse in this Court to challenge what he perceives to be an error in sentencing scoresheet.

Accordingly, it is hereby

**ORDERED:**

1.  The Court dismisses in part and denies in part the Petition for Writ of Habeas Corpus.  Grounds One, Two, Three, Four are **DISMISSED** as procedurally barred. Ground Five is **DENIED**. Grounds Six and Seven are **DISMISSED** as procedurally barred, and in the alternative, are **DENIED** on the merits.

2.  The Clerk of Court shall enter judgment accordingly, terminate any pending motions, and close this case.

## CERTIFICATE OF APPEALABILITY AND

## LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability (COA) on the petition.  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1); Harbison v. Bell, 556 U.S. 180, 183 (2009).  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate

that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004), or that "the issues presented were adequate to deserve encouragement to proceed further," <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003)(citations and internal quotation marks omitted).  Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Fort Myers, Florida, on this __19th__ day of March, 2014.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

sa: alr
Copies: All Parties of Record

-39-